PUBLIC SERVICE RAILWAY COMPANY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS, BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ESSEX, AND BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON.

Argued February Term, 1914—Decided July 10, 1914.

An order of the board of public utility commissioners, fixing the compensation to be paid by the Public Service Railway Company for the use of the Clay street bridge over the Passaic river, made in pursuance of the provisions of *Pamph. L.* 1913, *p.* 777, *held* not unreasonable.

On *certiorari.*

Before Justices GARRISON, TRENCHARD and MINTURN.

For Essex county, *Benjamin F. Jones.*

For Hudson county, *Joseph M. Noonan.*

106        NEW JERSEY SUPREME COURT.

Pub. Serv. Ry. Co. v. Bd. Utility Com'rs.        86 N. J. L.

For the board, *Frank H. Sommer.*

For the prosecutor, *Frank Bergen.*

The opinion of the court was delivered by

MINTURN, J.   The question involved in this case is the reasonableness of the order of the public utility commissioners, requiring the defendant to pay the sum of $2,644.46 annually, one-half to the county of Essex and the other half to the county of Hudson, for the use of the Clay street bridge spanning the Passaic river and connecting Clay street, Newark, with Central avenue, in East Newark.

The authority to fix the compensation is contained in *Pamph. L.* 1913, *p.* 777. The power of this court to review the order by *certiorari,* thus made, is contained in the thirty-eighth section of the Public Utility act, and the power to set it aside, so far as the facts are concerned, is contained in the statutory limitation, "when it clearly appears that there was no evidence before the board to support reasonably such order, or that the same was without the jurisdiction of the board."

In giving effect to that section we are not unmindful of the recent adjudication of this court in *Erie Railroad* v. *Board of Public Utility Commissioners,* 85 *N. J. L.* 420, vindicating the right of this court upon *certiorari* to review the facts under the provisions of the *Certiorari* act, but we do not read that deliverance as in effect nullifying the legislative intent contained in the section of the Utility act under consideration, since it is well settled that the ruling of a state railroad commission made in accordance with law, after an investigation of the facts may be made final by legislation as to the facts.   *Buttfield* v. *Stranahan,* 192 *U. S.* 470; *Bates Company* v. *Payne,* 194 *Id.* 106.

Since at common law the writ of *certiorari* was intended to review only the regularity and legality of the record of the lower tribunal, and not to settle disputed .facts (1 *Tidd Pr.* 399; *Wilson* v. *Hudson,* 32 *N. J. L.* 365), the legislature, in conferring the power to review the facts by the eleventh section of the *Certiorari* act, must be held not to have conferred

an inextinguishable or irrepealable power of review. The eleventh section of the *Certiorari* act, and the thirty-eighth section of the Utility act, must therefore be read as *in pari materia.*

Such, in effect, was the construction given to these sections in a case involving the exercise of the power of *mandamus* by this court. *Eastern Telephone, &c., Co. v. Board of Public Utility Commissioners,* 85 N. J. L. 420.

We are persuaded, therefore, to conclude that what the legislature intended in the enactment of both sections, was essentially similar, *i. e.,* to concede to this court a power to review the facts, but to set aside the order only upon concluding that the evidence upon which the order rested is not such as will reasonably support it, thus placing the appeal by *certiorari* upon the same *status,* relatively, as a District Court appeal. Where, in such case, there is evidence upon which the lower tribunal may reasonably infer the result attained, we will not disturb it. *Warren v. Finn,* 86 Atl. Rep. 530.

But whether we review the facts in this case under the eleventh section of the *Certiorari* act, or under the language contained in the thirty-eighth section of the Utilities act, our conclusion in this case must be identical.

The question presented involved an inquiry into the mooted proposition whether the added weight, and use of the trolley car, upon the bridge tended to shorten the life of the structure, and what financial return to the counties, if such were ascertained to be the fact, would be fair and equitable as compensation for the superimposed loss.

The board heard testimony as to the facts and considered the testimony of eminent experts, and worked the problem out upon a basis which allowed a certain sum for interest on the extra cost of construction made necessary by the added service; another sum for depreciation, due to the shortened life of the structure in use, and a final item for cost of maintenance, based upon this use, making a total of $2,644.46.

We are unable to accede to the contention that this sum is unreasonable in the light of the testimony, and we think it is entirely supportable by the facts and the testimony.

The contention of the defendant denying the jurisdiction of the board to impose payment of compensation upon the defendant, we are not required to consider, since the act of 1913 specifically confers that power upon the board, and the defendant has, by its stipulation in this case, admitted that it "has no legal authority to lay its tracks on such bridge, or cross the same," thus conceding to the board the necessary jurisdiction to make the order under review. The order of the board of public utility commissioners will therefore be affirmed.